IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BARBARA PATTERSON,    :
            :
    Plaintiff,    :
            :  CIVIL ACTION FILE
v.           :  NO.: 1:11-CV-3172-WSD-SSC
            :
WMW, INC., d/b/a Honda Carland, :
            :
    Defendant.    :

## ORDER and NON-FINAL REPORT AND RECOMMENDATION

This case is before the court on Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 4]. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's motion be **GRANTED in part and DENIED in part**.

## I. Procedural History

On September 19, 2011, Plaintiff Barbara Patterson ("Plaintiff") filed a complaint [Doc. 1] alleging that Defendant subjected her to a sexually hostile work environment and terminated her because of her sex, in violation of 42 U.S.C. § 1981 (First Claim for Relief) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") (Second Claim for Relief). She also asserts a state law claim for intentional infliction of emotional distress. (Third Claim for Relief).

In lieu of an answer, Defendant filed the pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief

can be granted. [Doc. 4]. Specifically, Defendant argues that: (1) Plaintiff's Title VII sexual harassment claim is barred because she failed to exhaust her administrative remedies with respect to that claim by filing a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging that she had been sexually harassed (Doc. 4, Def. Br. at 3-9);[1] (2) certain of Plaintiff's § 1981 claims are untimely (id. at 9-10); and (3) Plaintiff has failed to state a claim for intentional infliction of emotional distress, and in any case that claim is barred by the applicable two-year statute of limitations (id. at 10-15).[2] Plaintiff filed a response in opposition to the motion with supporting exhibits [Doc. 8] and an addendum to her response [Doc. 9]. Defendant filed a reply [Doc. 10], and Plaintiff filed a surreply [Doc. 11] and a notice of additional authority [Doc. 19].[3]

---

[1] The pages of Defendant's brief are not numbered, as required by LR 5.1E., NDGa. Therefore, the undersigned cites to the page numbers indicated on the court's CM-ECF system.

[2] Defendant also points out that Plaintiff alleged a claim of age discrimination in her EEOC charge, but she did not allege an age discrimination claim in her judicial complaint, and therefore, Defendant contends that "any age based allegations are barred and should not be considered by this Court." (Doc. 4, Def. Br. at 5). The undersigned declines to make a prospective ruling on the propriety of Plaintiff attempting to assert an age discrimination claim later in this litigation; Defendant can file the appropriate motion or response in the event Plaintiff seeks leave to amend her complaint.

[3] The court gave Plaintiff leave to file a surreply and allowed Defendant to file a response to the surreply (see Doc. 21), but Defendant did not respond.

## II.   Discussion

### A.   Standards Applicable to Rule 12(b)(6) Motions to Dismiss

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In order to state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 678-79.  To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations omitted); see also Boyd v. Peet, 249 F. App'x 155, 157

(11th Cir. 2007) (unpublished decision) (explaining, on review of the district court's order granting a motion for judgment on the pleadings, that "[t]he complaint's allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff's complaint should be dismissed" (citing <u>Twombly</u>, 550 U.S. at 555)).

## B. <u>42 U.S.C. § 1981 Claim (First Claim for Relief)</u>

In her First Claim for Relief, Plaintiff alleges that Defendant subjected her to sexual harassment and terminated her because of her sex, in violation of 42 U.S.C. § 1981.[4] (<u>See</u> Compl. ¶¶ 28-30). Defendant moves to dismiss any of Plaintiff's § 1981 claims that arose more than two years prior to the date Plaintiff

---

[4] 42 U.S.C. § 1981 provides as follows:

**(a)** **Statement of equal rights**
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b)** **"Make and enforce contracts" defined**
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c)** **Protection against impairment**
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." <u>Ferrill v. Parker Grp., Inc.</u>, 168 F.3d 468, 472 (11th Cir. 1999).

filed her complaint. (Doc. 4, Def. Br. at 9).

The undersigned does not reach Defendant's arguments, however, because, as Plaintiff herself recognized in response to Defendant's motion (see Doc. 9, Addendum to Pl. Br. at 1), "[s]ection 1981 was enacted to prevent discrimination based on race, not discrimination based on sex." Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1305-06 n.16 (N.D. Ga.) (recommending summary judgment for defendant on plaintiffs' § 1981 sex discrimination and retaliation claims because § 1981 does not prohibit discrimination based on sex), adopted by 678 F. Supp. 2d 1280, 1289-90 (N.D. Ga. 2009); see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 961 (11th Cir. 1997) (explaining that "[i]t is well-established that section 1981 is concerned with *racial* discrimination in the making and enforcement of contracts" (emphasis in original)); Brehm v. Seminole Towne Ctr. Ltd. P'ship, No. 6:11-cv-965-28GJK, 2012 U.S. Dist. LEXIS 15897, at *10 (M.D. Fla. Jan. 12, 2012) (recommending dismissal of § 1981 gender discrimination claim because "Section 1981 is not a statutory basis upon which to bring a gender discrimination claim"), adopted by 2012 U.S. Dist. LEXIS 15888 (M.D. Fla. Feb. 9, 2012).

Plaintiff has not alleged that Defendant discriminated against her because of her race; the sole basis for her discrimination claim is her sex, and therefore, she has failed to state a claim on which relief can be granted under 42 U.S.C. § 1981. Accordingly, it is **RECOMMENDED** that Plaintiff's sex discrimination claim, brought pursuant to 42 U.S.C. § 1981 (First Claim for Relief) be

**DISMISSED**.[5]  See, e.g., Forster v. A&M Hospitalities, L.L.C., No. 7:10-CV-112(HL), 2012 U.S. Dist. LEXIS 52106, at *9-10 (M.D. Ga. Apr. 13, 2012) (dismissing § 1981 claim because "[t]here [were] no allegations of racial discrimination in Plaintiff's complaint, only sexual discrimination").

## C.    Title VII Sexual Harassment Claim (Part of Second Claim for Relief)

### 1.    The Parties' Contentions

Defendant moves to dismiss Plaintiff's Title VII sexual harassment claim on the ground that Plaintiff failed to administratively exhaust that claim as required by Title VII.  (Doc. 4, Def. Br. at 3-9).[6]  Defendant asserts that in her EEOC charge,[7] Plaintiff alleged only that she was terminated on October 31, 2009 because of her sex and age, and she included no allegations in support of a hostile work environment or harassment claim.  (Id. at 6-8).

---

[5] While Defendant did not seek dismissal of Plaintiff's § 1981 claim on the ground that she cannot bring a sex discrimination claim pursuant to § 1981, Plaintiff is not prejudiced by the undersigned's *sua sponte* recommendation that her § 1981 claim be dismissed because she acknowledged "that a claim of sexual discrimination, including a claim of hostile environment sexual discrimination, is not available under 42 U.S.C. § 1981" (Doc. 9, Addendum to Pl. Br. at 1), and because she will have the opportunity to file objections to the Report and Recommendation. As for Plaintiff's assertion that "[t]he remedies provided under 42 U.S.C. § 1981a(b) are also available to a complaining party under Title VII" (id.), the undersigned's recommendation that Plaintiff's § 1981 claim be dismissed does not disturb the availability of damages pursuant to 42 U.S.C. § 1981a.

[6] Defendant also contends that other unspecified disparate treatment claims are barred (see Doc. 4, Def. Br. at 7-8), but Plaintiff has asserted only a Title VII sex discrimination claim based on alleged sexual harassment and her termination (see Doc. 1, Compl.).

[7] Both parties incorrectly state that Plaintiff filed her EEOC charge on March 18, 2010. (See Doc. 4, Def. Br. at 5; Doc. 8, Pl. Br. at 4; see also Doc. 1, Compl. ¶ 9).  Plaintiff's EEOC charge, attached to her response to Defendant's motion to dismiss, shows that she signed the charge on April 7, 2010, and that it was received on that same date by the EEOC.  (See EEOC Charge, Doc. 8-1 at 3).

In response, Plaintiff contends that "[t]he allegations in [her] Title VII claim in her complaint are 'like or related to, or grow out of, the allegations contained in her EEOC charge,' " and therefore, she has exhausted her administrative remedies with respect to all of her sex discrimination claims, including her sexual harassment claim.  (See Doc. 8, Pl. Br. at 7 (quoting Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004))).  She urges the court to consider allegations of a sexually hostile work environment she made in the EEOC Intake Questionnaire she completed prior to filing her EEOC charge, and she argues that the allegations in the Questionnaire, in addition to those set forth in her EEOC charge, satisfy the requirement that she exhaust her administrative remedies.  (Id. at 5-6; see also Doc. 11, Surreply at 2).

The undersigned notes that both parties refer to documents that were attached not to Plaintiff's complaint but to Plaintiff's response brief [Doc. 8]; those documents include the EEOC charge Plaintiff filed on April 7, 2010 and the EEOC Intake Questionnaire Plaintiff signed on March 18, 2010.  Therefore, before addressing the merits of the parties' contentions, the undersigned must determine what factual materials may be considered, and the standard by which they must be assessed, in evaluating Defendant's contention that dismissal of Plaintiff's sexual harassment claim is required because she failed to exhaust that claim.

**2.   Standards for Determining Facts for Rule 12(b)(6) Motion to Dismiss for Failure to Exhaust Administrative Remedies**

"In considering a defendant's motion to dismiss under Rule 12(b)(6), the

allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff." Tri-State Consumer Ins. Co. v. LexisNexis Risk Solutions, Inc., No. 1:11-cv-1313-TCB, 2011 U.S. Dist. LEXIS 130151, at *8 (N.D. Ga. Nov. 10, 2011) (citing Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003)). In general, "[i]f a district court considers matters outside of the pleadings when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), then the motion to dismiss must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56." Horne v. Potter, 392 F. App'x 800, 802 n.1 (11th Cir. 2010) (unpublished decision) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)). There are exceptions to that general rule, however. A court may consider documents attached to the complaint and documents filed in connection with a motion to dismiss without converting the motion to a motion for summary judgment if those documents are central to the complaint and not in dispute. See Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999); see also Horne, 392 F. App'x at 802. Documents are not in dispute when there is no dispute about their authenticity. See Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (explaining that "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity"). In addition, "the court may consider public records on a motion to dismiss without converting the motion to one for summary judgment." Luke v. Residential Elevators, Inc., No. 4:10-cv-00524-SPM-WCS, 2011 U.S. Dist. LEXIS 11234, at *3

(N.D. Fla. Jan. 28, 2011).

Moreover, when considering a Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies, such as the pending motion, " 'it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.' " Tillery v. U.S. Dep't of Homeland Sec., 402 F. App'x 421, 424 (11th Cir. 2010) (unpublished decision) (quoting Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)); see also Graton v. Owens, No. 7:09-CV-99 (HL), 2010 U.S. Dist. LEXIS 79979, at *4 (M.D. Ga. July 13, 2010) (noting that "[t]he Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case" (citing Bryant, 530 F.3d at 1376-77)), adopted by 2010 U.S. Dist. LEXIS 79960 (M.D. Ga. Aug. 9, 2010).

The undersigned finds that in deciding Defendant's motion, the court may consider the documents attached to Plaintiff's response because they are administrative records; they are central to her claims; they are not in dispute; they are relevant to the issue of Plaintiff's exhaustion of administrative remedies; and the EEOC charge is referred to in Plaintiff's complaint. See, e.g., Tillery, 402 F. App'x at 425 (finding that "in ruling on DHS's Rule 12(b)(6) motion to dismiss based solely on exhaustion of administrative remedies and not on the merits of Tillery's claims, the district court did not err in considering evidence outside the

pleadings or in making fact findings as to exhaustion"); Horne, 392 F. App'x at 802 (finding that "the district court did not err in considering the exhibits attached to the USPS's motion to dismiss, including the Notification of Personnel Action and the March 26, 2009 EEOC right to sue letter, because they were central to the claims in Horne's complaint and were undisputed"); Luke, 2011 U.S. Dist. LEXIS 11234, at *4 (considering documents attached to defendant's 12(b)(6) motion to dismiss "without converting the motion into a motion for summary judgment because the documents are public records of an administrative agency and because Plaintiff generally refers to the charge of discrimination filed with the Florida Commission on Human Relations in the complaint"); Sessom v. Wellstar Hosp., No. 1:08-CV-2057-TWT-LTW, 2009 U.S. Dist. LEXIS 126752, at *6 n.1 (N.D. Ga. Apr. 27, 2009) (finding that, even though the EEOC charge was not attached to the plaintiff's complaint, it was "properly considered on the motion to dismiss because Plaintiff has not disputed its authenticity and refers to it in her Complaint," and "it is central to Plaintiff's cause of action given that the filing of an EEOC charge is a condition precedent to filing a Title VII claim"), adopted by 2009 U.S. Dist. LEXIS 105920 (N.D. Ga. May 28, 2009); Moore v. Potter, No. 3:04-cv-1057-J-32HTS, 2006 U.S. Dist. LEXIS 52455, at *15 (M.D. Fla. July 26, 2006) (considering on a 12(b)(6) motion to dismiss, among other things, "various filings and decisions of administrative agencies, including the USPS, [the EEOC] and [MSPB]").

### 3.    Facts Relevant to Defendant's Motion to Dismiss

On March 18, 2010, Plaintiff filled out an EEOC Intake Questionnaire, in which she stated that the bases for her discrimination claim were sex and age. (Intake Questionnaire, Doc. 8-1 at 8). One of the questions on the questionnaire was "What happened to you that you believe was discriminatory? Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you." (Id.). In response to that question, Plaintiff listed October 31, 2009 as the date of the discriminatory act and described the challenged action as "Discharged by Reza Moshiri (David Smith, Bill Hughes, and Reza Moshiri were likely all involved in making the decision, and Keith Campbell may have been involved)." (Id.). Another question was "Why do you believe these actions were discriminatory?" Plaintiff wrote, among other things, that she was fired for not meeting her sales quota while men who did not meet their quota were not, and that she was treated "badly" and "subjected to harassment for months." (Id.). She also referred to, and attached to the Intake Questionnaire, a 5-page letter that she wrote to her attorney,[8] in which she recounted incidents of disparate treatment and harassment based on her sex and age. Plaintiff indicated on the questionnaire that her attorney assisted her in filling it out. (Id. at 4). Plaintiff's Intake Questionnaire was not verified or signed under penalty of perjury.

On April 7, 2010, Plaintiff filed a charge of discrimination with the EEOC. (EEOC Charge, Doc. 8-1 at 3). In her charge, Plaintiff checked the boxes for sex

---

[8] Her attorney was Jonathan A. Parrish, Esq., an attorney with the office of James Lee Ford, P.C. (See Intake Questionnaire, Doc. 8-1 at 8, 10). James Ford, Esq. continues to represent Plaintiff in this litigation.

and age discrimination and indicated that the earliest and last dates of discrimination were October 31, 2009, the date she was terminated. (Id.). In the narrative portion of the charge, Plaintiff wrote:

> I was hired by the above-named employer on April 1, 2002 as a Sales & Leasing Consultant. On October 31, 2009, I was discharged.
>
> My separation notice issued by Mr. W.J. Hughes, General Manager, states: "terminated after repeatedly failing to meet sales goals assigned to and agreed to by her. Several consultations and warnings were given before termination."
>
> I believe I have been discriminated against because of my sex (female) and age (63), in violation of Title VII of the Civil Rights Act of 1964, as amended and The Age Discrimination in Employment Act of 1967, as amended.

(Id.). She signed her name beneath the language on the charge form that reads "I declare under penalty of perjury that the above is true and correct." (Id.).

In her complaint, Plaintiff alleges that on June 23, 2011, the EEOC terminated its investigation of her charge and issued a Notice-of-Right-to-Sue letter, which Plaintiff received on June 24, 2011. (Doc. 1, Compl. ¶ 10). She did not attach a copy of that letter.

**4.    Analysis**

It is well-settled that a Title VII plaintiff must satisfy the statute's administrative exhaustion requirement before filing her judicial complaint. "Prior to filing a Title VII action . . . a plaintiff first must file a charge of discrimination with the EEOC." Gregory, 355 F.3d at 1279 (citing Sanchez v. Standard Brands,

Inc., 431 F.2d 455, 460 (5th Cir. 1970)).[9] Plaintiff bears the burden of proving that she has filed "a valid and timely-filed EEOC charge." Rizo v. Ala. Dep't of Human Res., 228 F. App'x 832, 836 (11th Cir. 2007) (unpublished decision); see also Owens v. Omni Hotels Mgmt. Corp., No. 1:11-cv-00699-TWT-RGV, 2012 U.S. Dist. LEXIS 57896, at *18 (N.D. Ga. Mar. 27, 2012) (explaining that "[w]hen a defendant disputes that a plaintiff has exhausted administrative remedies or denies that the plaintiff has fulfilled the preconditions to suit, the 'plaintiff then bears the burden of proving that the conditions precedent . . . have been satisfied' " (quoting Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1010 (11th Cir. 1982))).

The purpose of the administrative exhaustion requirement is to give the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory, 355 F.3d at 1279 (quoting Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)). In light of this purpose, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Gregory, 355 F.3d at 1280 (internal quotation omitted). "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint," but "allegations of new acts of discrimination are inappropriate." Gregory, 355 F.3d at 1279-80 (internal quotation omitted).

---

[9] Decisions of the Fifth Circuit handed down before October 1, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

In Gregory, the court held that, even though the plaintiff alleged in her EEOC charge that she was terminated because of her sex and race, but did not allege that she had been terminated in retaliation for having complained of discrimination, her Title VII retaliation claim was not administratively barred. Id. at 1280. The court observed:

> The facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inex[tr]icably intertwined with her complaints of race and sex discrimination. That is, she stated facts from which a reasonable EEOC investigator could have concluded that what she had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment to the hospital's administration. Specifically, shortly after being subjected to certain allegedly discriminatory acts, she was terminated.

Id.

As a preliminary matter, the undersigned finds that, if the court limits its consideration of the proper scope of the EEOC charge to the charge itself, then Plaintiff's sexual harassment claim is barred for her failure to include that claim in the charge because the facts alleged in her EEOC charge could not "have reasonably been extended to encompass a claim for [sexual harassment]." Id. Plaintiff alleged no facts in her charge that would support a claim for sexual harassment; she limited her EEOC charge to her allegation that she was discharged; and she limited the date on which the alleged discrimination took place to October 31, 2009, the date of her discharge. (See EEOC Charge, Doc. 8-1

at 3);[10] see also, e.g., Ramon v. AT&T Broadband, 195 F. App'x 860, 862-64, 866 (11th Cir. 2006) (unpublished decision) (finding the plaintiff failed to exhaust her hostile work environment claim because in her EEOC charge she alleged claims of sex, national origin and disability discrimination related to a cut in pay, a denial of leave and her termination, but she included no allegations "that reasonably point[ ] to the kind of pervasive and oppressive conditions that would allow [the court] to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment"); Green v. Elixir Indus., Inc., 152 F. App'x 838, 839-41 (11th Cir. 2005) (unpublished decision) (finding that plaintiff's racially hostile work environment claim was not exhausted because he included only facts about his racially discriminatory termination claim in his EEOC charge and failed to include any facts to support a hostile work environment claim); Bridges v. Standard Pacific of Tampa GP, Inc., No. 8:06-cv-1937-T-23TGW, 2007 U.S. Dist. LEXIS 4051, at *5-6 (M.D. Fla. Jan. 19, 2007) (finding that plaintiff's retaliation and sexual harassment claims were not exhausted because her charge "focuse[d] exclusively on perceived sexual discrimination against her, on a date certain, for a particular reason, in a particular manner, from a specified source,

_____

[10] In Plaintiff's Notice of Additional Authority [Doc. 19], Plaintiff "refers the court to the Eleventh Circuit's discussion [of the scope of a charge of discrimination] in *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524, 1529-1530 (11th Cir. 1983)." Plaintiff did not explain how that case supports her arguments; the undersigned has reviewed the decision and finds that it is inapposite. In Phillips, the court found that, because the plaintiff had alleged in her EEOC charge that she was terminated for failure to engage in oral sex, her judicial complaint alleging that she was terminated for failure to engage in sex was not barred because "sex" is related to "oral sex," and "[a]ny variance between appellee's EEOC and judicial complaints was inconsequential." 711 F.2d at 1530.

and with a particular consequence (her termination)" and "fail[ed] (by label, by factual allegation, by temporal scope, or otherwise) to identify or even intimate the notions of retaliation or sexual harassment"); <u>Van Meter v. Jefferson Smurfit Corp.</u>, No. 1:95-CV-1274-MHS, 1996 U.S. Dist. LEXIS 17388, at *19 (N.D. Ga. July 1, 1996) (dismissing plaintiff's Title VII harassment claim because it was not reasonably related to the claims in her EEOC charge where her charge "related solely to her termination and did not include any allegations of harassment").[11]

However, in an attempt to get around the omission of her sexual harassment claim from her EEOC charge, Plaintiff argues that "in view of the added information [she] provided the EEOC in her intake questionnaire, [her] claims of hostile work environment sexual harassment would reasonably be expected to grow out of [her] charge of discrimination, even if the EEOC was less than thorough in preparing Plaintiff's charge of discrimination." (Doc. 11, Pl. Surreply at 2 (citation omitted) (internal quotations omitted); <u>see also</u> Doc. 8, Pl. Br. at 6). Plaintiff's argument is unpersuasive.

In <u>Francois v. Miami Dade Couny, Port of Miami</u>, 432 F. App'x 819 (11th Cir. 2011) (unpublished decision), the court considered and rejected a similar

---

[11] The undersigned acknowledges that courts have indicated that EEOC charges should be liberally construed because charging parties are usually unrepresented by counsel. <u>See</u> <u>Green</u>, 152 F. App'x at 840 (noting that the court "must liberally construe EEOC charges that are prepared without the assistance of counsel"); <u>Van Meter</u>, 1996 U.S. Dist. LEXIS 17388, at *18 (explaining that "charges filed with the EEOC should be liberally construed because charging parties usually are unfamiliar with the technicalities of formal pleadings and are not assisted by an attorney"). In this case, as indicated by her EEOC Intake Questionnaire, Plaintiff appears to have been represented by counsel during the EEOC proceedings. Furthermore, even if Plaintiff's EEOC charge is liberally construed, Plaintiff did not include facts that would support a sexual harassment claim.

argument concerning an EEOC Intake Questionnaire.[12]   In that case, the defendant moved for summary judgment on the plaintiff's national origin discrimination claim because he had not included it in his EEOC charge.  Id. at 821.  The plaintiff argued "that even though his [EEOC] charge did not include such a claim, he fulfilled the purposes of exhaustion by including the claim in his EEOC intake questionnaire which put [the defendant] on notice of this claim."  Id.  The court acknowledged that it had "never directly addressed the effect of an intake questionnaire for exhaustion purposes," but noted that it had "considered the interrelationship between the EEOC charge and an intake questionnaire several times when assessing whether a charge has been timely filed."  Id.  For example, in Wilkerson v. Grinnell Corp., 270 F.3d 1314 (11th Cir. 2001), the court "held an intake questionnaire could be considered a charge for the purpose of satisfying the statute of limitations where:  the questionnaire was verified;[13] the questionnaire contained the basic information required by a charge; and the form's language could have been interpreted to represent a charge."  Francois, 432 F. App'x at 822 (citing Wilkerson, 270 F.3d at 1320-21).

However, the Eleventh Circuit in Francois cautioned that "[t]his is not the

---

[12]   Defendant discussed the district court's decision in Francois, 742 F. Supp. 2d 1350 (S.D. Fla. 2010) in support of its argument that "[t]he permissible scope  of plaintiff's judicial complaint is determined by a timely-filed EEOC charge, and not by an EEOC intake questionnaire."  (Doc. 10, Def. Reply at 2-4).

[13] The EEOC requires that a Title VII charge be "in writing and signed and . . . verified." 29 C.F.R. § 1601.9.  The EEOC defines "verified" as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury."  29 C.F.R. § 1601.3(a).

general rule," and that " 'as a general matter an intake questionnaire is *not* intended to function as a charge.' " Id. (quoting Pijnenburg v. West Ga. Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir. 2001)). In Pijnenburg, the court "held the plaintiff's unverified intake questionnaire did not satisfy Title VII's timely filing requirement, as it did not notify her employer of her claim or initiate the EEOC investigation." Francois, 432 F. App'x at 822 (citing Pijnenburg, 255 F.3d at 1306). The court in Francois further noted that in Bost v. Federal Express Corp., 372 F.3d 1233 (11th Cir. 2004), it "similarly held a plaintiff's intake questionnaire, which was filed along with an affidavit, did not satisfy the requirements of a timely charge." Francois, 432 F. App'x at 822 (citing Bost, 372 F.3d at 1241). Specifically, the court explained that in Bost, the court had

> noted the circumstances did not support a conclusion that the questionnaire satisfied the timely filing requirement, because: the plaintiff clearly understood the intake questionnaire was not a charge because he later filed a timely charge; the EEOC did not initiate its investigation until after the plaintiff filed his charge; and the questionnaire form itself did not suggest it was a charge.

Id. (citing Bost, 372 F.3d at 1241). The Francois court did not "definitely decid[e] whether an EEOC intake questionnaire may ever be considered when determining whether a plaintiff's Title VII . . . claim has been exhausted" but held that the district court correctly granted summary judgment in that case. 432 F. App'x at 822. The court reasoned:

> First, if only the EEOC charge itself should have been considered, Francois failed to administratively exhaust his national origin discrimination claim because he did not check the box for national origin, or allege any facts in the narrative section that could be

construed to raise such a claim of discrimination.

Second, even if an intake questionnaire can be taken into account under certain circumstances, the facts do not support doing so here. As in *Pijnenburg*, undisputed evidence showed Francois's intake questionnaire was not verified, and the form language did not indicate it would be considered a charge when a plaintiff also filed a timely charge, as Francois did. Furthermore, the fact Francois filed an actual timely charge suggests he did not intend his intake questionnaire to function as a charge.

Finally, none of the evidence demonstrated [Defendant] was on notice of the national origin claim. Moreover, the EEOC did not investigate the national origin discrimination claim.

Id.

For the same reasons discussed in Francois, the undersigned finds that the circumstances of this case do not support taking Plaintiff's Intake Questionnaire into account in determining whether she exhausted her sexual harassment claim.[14] First, it is undisputed that Plaintiff's Intake Questionnaire was not

---

[14] Plaintiff attempts to distinguish Francois because in that case, the plaintiff had filed a judicial complaint alleging national origin discrimination, but he had alleged only sex discrimination and retaliation, not national origin discrimination, in his charge. See Francois, 742 F. Supp. 2d at 1351-52. Plaintiff argues, "Unlike the Plaintiff in that case, this Plaintiff did not file a charge alleging sexual discrimination, and then file a judicial complaint alleging national origin discrimination." (Doc. 11, Pl. Surreply at 1). Instead, Plaintiff argues, she alleged sex discrimination in her charge, and "[s]exual harassment is sexual discrimination." (Id. at 1-2).

Plaintiff's argument fails. In the first place, her argument does not address the factors set out by the Court of Appeals in Francois, see 432 F. App'x at 822, for determining whether an intake questionnaire can be considered in evaluating an exhaustion issue, and the distinction Plaintiff makes between herself and the plaintiff in Francois does not support her argument that her intake questionnaire should be considered. Moreover, as discussed *supra* in the analysis of whether the charge itself satisfied the exhaustion requirement for her sexual harassment claim, in several cases courts have found that, even though the plaintiffs had alleged in a charge that they had been subjected to a discriminatory act (such as a termination) because of a protected characteristic such as race or sex, that allegation was insufficient to show that the plaintiffs had exhausted claims that they had been subjected to harassment because of that same protected characteristic. See, e.g., Ramon, 195 F. App'x at 862-64, 866; Green, 152 F. App'x at 839-41; Bridges, 2007 U.S. Dist. LEXIS 4051, at *5-6; Van Meter, 1996 U.S. Dist. LEXIS 17388, at *19. Thus, for purposes of determining whether a claim has been exhausted, a claim that a person was

19

verified.[15] Second, the EEOC's instructions for filling out the Intake Questionnaire state, "**Filling out and bringing us or sending us this questionnaire does not mean that you have filed a charge**" (see instructions to Intake Questionnaire, Doc. 8-1 at 6 (emphasis in original)), thus indicating that the EEOC did not consider Plaintiff's Intake Questionnaire to be a charge of discrimination and that Plaintiff was on notice that it was not a charge. Third, "the fact [Plaintiff] filed an actual timely charge suggests [s]he did not intend [her] intake questionnaire to function as a charge." Francois, 432 F. App'x at 822. Finally, no evidence has been presented that Defendant received the Intake Questionnaire or was on notice of Plaintiff's questionnaire, or that the EEOC investigated that claim.[16]

For the reasons discussed, the undersigned finds that Plaintiff did not exhaust her sexual harassment claim because she failed to include that claim in

---

subjected to sexual harassment is not the same as a claim that a person was terminated because of sex.

[15] In Wilson v. Sprint/United Management Co., No. 6:10-cv-1663-Orl-22GJK, 2011 U.S. Dist. LEXIS 73743, at *12-13 n.8 (M.D. Fla. July 8, 2011), the court acknowledged the Supreme Court's conclusion in Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008), that an unverified intake questionnaire in an Age Discrimination in Employment Act ("ADEA") case could meet the EEOC's standards for determining what constituted a charge. However, as noted in Wilson, the Court in Holowecki stressed that " 'employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.' " Wilson, 2011 U.S. Dist. LEXIS 73743, at *13 n.8 (quoting Holowecki, 552 U.S. at 393). While EEOC charges in ADEA cases are not required to be verified, EEOC charges filed in Title VII cases must be verified, and therefore, even under Holowecki's standard, an unverified EEOC intake questionnaire does not meet the EEOC's standards for determining what constitutes a charge. Id. at *14 n.8.

[16] In Barzanty v. Verizon Pennsylvania, Inc., 361 F. App'x 411, 415 (3rd Cir. 2010) (unpublished opinion), the Third Circuit rejected the plaintiff's reliance on the EEOC intake questionnaire as support for her argument that she had exhausted her hostile work environment claim. The court explained that "[t]he EEOC Charge Form and the Intake Questionnaire serve different purposes," and that "the Intake Questionnaire is not shared with the employer during the pendency of the EEOC investigation." Id.

her EEOC charge.  Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Title VII sexual harassment claim (part of Second Claim for Relief) be **GRANTED** and that her sexual harassment claim be **DISMISSED**.[17]

## D. Intentional Infliction of Emotional Distress ("IIED") Claim (Third Claim for Relief)

Plaintiff alleges that she was subjected to severe emotional distress through Defendant's managers' "outrageous and egregious conduct," i.e., "[t]he sexual harassment carried out against the Plaintiff by Honda's managing agents [that] was designed to humiliate Plaintiff in performing her job with Honda." (Compl. ¶¶ 37-42).  Plaintiff alleges that the following events occurred between 2002 and March 2009:  she was "told by her male supervisors and coworkers that Honda did not need a female salesperson"; she was almost knocked down by a male car salesman to get to a customer; she was repeatedly abused verbally by Defendant's general sales manager, Reza Moshiri, in front of employees and customers; "Moshiri would yell at Plaintiff at the top of his voice to get her belongings and 'get the f--- out of here,' and other vulgarities"; Defendant's general manager, Ricky Stokes, told her " 'women are only good at certain things, not selling cars,' " and " 'I am going to see how many times I can make you cry' "; the other male salespersons laughed at Plaintiff with Stokes rather than rebuking

---

[17] Dismissal of Plaintiff's Title VII sexual harassment claim will not necessarily preclude her from arguing that acts of harassment, disparate treatment short of termination, etc., evidenced discriminatory animus based on her sex.  This Report simply recommends that Plaintiff's separate claim based on those allegations be dismissed.

Stokes for his conduct; Moshiri told Plaintiff she could not sell a new car, " 'that only men were good at selling cars,' " and " 'to let the male salespersons do their job' "; Stokes asked her if she had ever been poor and told her "perhaps she should have been"; Stokes asked her "why don't you stay home instead of working" and told her "that what women do is live off a man," and "[w]hen Plaintiff began to cry in response to the berating she was receiving," Stokes responded, " 'that is what I wanted to do, make you cry' "; a sales manager locked Plaintiff in a car, "while male salespersons stood around the car and laughed at her"; the new car manager embarrassed Plaintiff in front of an Indian customer she was helping by making a derogatory comment about the customer and refusing to give Plaintiff the price of the car, thus causing the customer to leave; and in March 2009, the new car manager wrote Plaintiff up for being late to a sales meeting, "despite the fact that male salespersons were routinely late and were not written up, or otherwise disciplined." (See Compl. ¶¶ 17-25). Plaintiff alleges that "[t]he hostile conduct by Honda's male managers and salespersons continued throughout Plaintiff's employment at Honda." (Id. ¶ 26). Finally, she alleges that on October 31, 2009, Moshiri, the general sales manager, terminated Plaintiff and stated, " 'I told you we were going to get rid of you and we have.' " (Id.).

Defendant argues that Georgia's two-year statute of limitations for personal

injury actions bars Plaintiff from bringing any claim arising from conduct that occurred more than two years prior to the date Plaintiff filed this lawsuit. (Doc. 4, Def. Br. at 9-10, 14-15). Defendant also argues that Plaintiff has failed to state a claim for intentional infliction of emotional distress because she has not alleged sufficiently extreme or outrageous conduct or alleged that she suffered sufficiently severe emotional distress. (Id. at 10-14).

### 1.    **Statute of Limitations**

In Georgia, the statute of limitations for a claim of intentional infliction of emotional distress is two years. Martin v. Peach Cnty., Ga., No. 5:10-CV-236 (MTT), 2011 U.S. Dist. LEXIS 117655, at *50 (M.D. Ga. Oct. 12, 2011) (citing O.C.G.A. 9-3-33). Defendant argues that, because Plaintiff filed this action on September 19, 2011, "only those claims which allegedly occurred between September 19, 2009 and September 19, 2011 would fall within the statute of limitations." (Doc. 4, Def. Br. at 14). Defendant asserts that "the only specific allegation within that time frame would be Plaintiff's termination on October 31, 2009" and contends that a termination is insufficient to support a claim of intentional infliction of emotional distress. (Id. at 14-15).

Citing Fox v. Ravinia Club, Inc., 414 S.E.2d 243, 244 (1991), Plaintiff argues that the court must consider the cumulative effect of the conduct alleged in support of her intentional infliction of emotional distress claim, and "as long as one or more acts of hostile or abusive conduct toward Plaintiff took place within

the two year period preceding her complaint, the jury should be able to consider all of the repeated acts of sexual hostility in making a determination of liability." (Doc. 8, Pl. Br. at 14). Plaintiff contends that "Defendant's alleged outrageous and egregious conduct in this action continued into the two year period preceding September 19, 2011, the date [she] commenced this civil action." (Id. at 15). She cites to "the general sales manager's statement to Plaintiff at the time he fired her [as] evidence [of] Defendant's continued hostility toward Plaintiff." (Id.).

In Martin, the court considered an argument similar to Plaintiff's in its analysis of whether the two-year statute of limitations barred the plaintiff's intentional infliction of emotional distress claim. 2011 U.S. Dist. LEXIS 117655, at *51. The argument was that the tortfeasor's conduct "constitutes a 'continuing tort,' with the statutory clock beginning to run only upon completion of the last tortious act." Id. The court explained that "[t]he continuing tort doctrine 'applies where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time.' " Id. at *52 (quoting Mears v. Gulfstream Aerospace Corp., 484 S.E.2d 659, 664 (Ga. Ct. App. 1997)). "In such a case, 'the statute of limitation[] does not begin to run until such time as the continued tortious act producing injury is eliminated.' " Id. (quoting Mears, 484 S.E.2d at 664).

The court in Martin further explained that the continuing tort doctrine is

limited, however, "by the discovery rule, which provides that 'a continuing tort cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof.' " Id. (quoting Waters v. Rosenbloom, 490 S.E.2d 73, 75 (Ga. 1997)). The court found that the continuing tort doctrine did not "save" the plaintiff's intentional infliction of emotional distress claim in that case because there was no evidence that the alleged tortfeasor's conduct continued into the two-year statute of limitations period, and because the plaintiff "discovered, or should have discovered, her injury and the cause thereof when she was allegedly reduced to tears and forced to leave the meeting with [the alleged tortfeasor] on April 11, 2008." Id. at *53. The court concluded that "[a]t the latest, [the plaintiff's] emotional injury was discoverable when she was terminated on April 16, 2008." Id.

In Mears, the court considered the plaintiff's argument, similar to that made in this case, "that [the plaintiff's] termination in November 1993 constituted the 'ultimate act of inflicting emotional distress' and [brought] her claim within the limitation period." 484 S.E.2d at 663. The court acknowledged that it could not "clearly ascertain the date on which [the plaintiff] first claim[ed] to have experienced emotional distress," but because "the record reveal[ed] that stress and depression purportedly stemming from [her supervisor's] conduct prevented her from returning to Gulfstream after June 1, 1993," the court found that the

plaintiff's "cause of action for intentional infliction of emotional distress accrued when [her supervisor's] conduct allegedly culminated in damage, which occurred no later than June 1, 1993." Id. The court further found that the only action that occurred within the limitations period, the plaintiff's termination following the expiration of her disability benefits, was "not the type of 'outrageous conduct' necessary to support a claim for intentional infliction of emotional distress." Id. Thus, the court concluded that the plaintiff's intentional infliction of emotional distress claim, filed in September 1995, was barred by Georgia's two-year statute of limitations. Id.

In this case, there appears to be no dispute that the only allegedly tortious conduct that occurred on or after September 19, 2009, i.e., within the two-year statute of limitations period, is Plaintiff's termination and the statement made by her manager during the termination. (See Compl. ¶ 26). The remaining events set forth in Plaintiff's complaint allegedly occurred between 2002 and March 2009. (See id. ¶¶ 17-25). Thus, because this case is before the court on Defendant's motion to dismiss, the issue is whether Plaintiff's complaint shows that she "discovered, or should have discovered, her injury and the cause thereof" prior to September 19, 2009. Martin, 2011 U.S. Dist. LEXIS 117655, at *53. If Plaintiff's claim accrued prior to that date, i.e., if the alleged wrongful conduct "culminated in damage" prior to September 19, 2009, then the events that arguably gave rise

to her intentional infliction of emotional distress claim prior to that date could not form the basis of her claim because they would fall outside the applicable statute of limitations. See Mears, 484 S.E.2d at 663. The court would then consider only those events that occurred within the two-year statute of limitations period for purposes of determining whether Plaintiff has stated an intentional infliction of emotional distress claim on which relief can be granted.[18]

In light of Plaintiff's allegations, the current state of the record and the presentation of the statute of limitations issue on motion to dismiss, the court cannot determine whether Plaintiff discovered or should have discovered her injury and the cause thereof prior to September 19, 2009. In other cases considering allegations similar to those in this case, courts have found that the plaintiff discovered, or should have discovered, his or her intentional infliction of emotional distress claim at the point when the emotional distress culminated in an injury, as evidenced by the plaintiff's seeking psychiatric or psychological counseling or missing work due to the emotional distress, or resigning or being

---

[18] If the only events under consideration are Plaintiff's termination and the manager's statements made during her termination, Plaintiff's intentional infliction of emotional distress claim would fail. See, e.g., Mears, 484 S.E.2d at 663 (finding that the only action which occurred within the limitations period, the plaintiff's termination following the expiration of her disability benefits, was "not the type of 'outrageous conduct' necessary to support a claim for intentional infliction of emotional distress"); Fox, 414 S.E.2d at 244-45 (finding that the acts alleged in the plaintiff's amended complaint concerning her termination and her manager's behavior at the unemployment hearing "were not sufficiently outrageous and egregious to constitute the tort of intentional infliction of emotional distress"). However, as discussed *infra*, the undersigned views the cumulative effect of those events and the alleged events preceding her termination.

terminated.  <u>See, e.g.</u>, <u>Martin</u>, 2011 U.S. Dist. LEXIS 117655, at *53 (finding that the plaintiff "discovered, or should have discovered, her injury and the cause thereof when she was allegedly reduced to tears and forced to leave the meeting with [the alleged tortfeasor] on April 11, 2008" and that "at the latest, her emotional injury was discoverable when she was terminated on April 16, 2008"); <u>Wood v. Archbold Med. Ctr., Inc.</u>, 738 F. Supp. 2d 1298, 1371 (M.D. Ga. 2010) (finding that the plaintiff "discovered his injury in October of 1998" when "[h]e first began experiencing the embarrassment and anguish associated with his IIED claim [and] began discussing those matters with his psychiatrist"); <u>Baynes v. Philips Med. Sys.</u>, No. 1:08-CV-2027-TWT, 2009 U.S. Dist. LEXIS 89434, at *7-8 (N.D. Ga. Sept. 25, 2009) (finding that the plaintiff's intentional infliction of emotional distress claim accrued no later than April 2006 when she took medical leave as a result of the stress of the job); <u>Mears</u>, 484 S.E.2d at 663 (finding that the plaintiff's cause of action for intentional infliction of emotional distress accrued no later than June 1, 1993 when her stress and depression prevented her from returning to work, i.e., when the conduct at issue "allegedly culminated in damage"); <u>Fox</u>, 414 S.E.2d at 244 (finding that cause of action for IIED accrued no later than April 1987 when the plaintiff began seeing a psychologist); <u>Adams v. Emory Univ. Clinic</u>, 347 S.E.2d 670, 673 (Ga. Ct. App. 1986) (finding that the plaintiff "had a cause of action, if one is legally cognizable, in May 1982 when as

a result of [the] alleged abuse her blood pressure rose to the stroke level and she was forced to miss work").

In this case, it is not clear from the allegations in Plaintiff's complaint whether or not the emotional distress she experienced culminated in a legally cognizable injury before September 19, 2009.  If it did not, then the continuing tort doctrine **may** apply to "save" Plaintiff's claim because the statute of limitations **may** not have begun to run until "the continued tortious act producing injury [was] eliminated," <u>Martin</u>, 2011 U.S. Dist. LEXIS 117655, at *52, by virtue of her termination on October 31, 2009.  The undersigned also notes that the cases listed *supra* were before the court on summary judgment, after discovery and the parties' development of the facts underlying the intentional infliction of emotional distress claims.  That is not the case here.  Perhaps after further factual development, Defendant will be able to show that Plaintiff's intentional infliction of emotional distress claim is barred by the applicable statute of limitations, but such a finding is premature at this point.  Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's intentional infliction of emotional distress claim on the ground that it is barred by the two-year statute of limitations be **DENIED without prejudice** to Defendant's right to move for summary judgment on that ground after the discovery period has ended.[19]

_____

[19] Defendant will not be prejudiced if required to conduct discovery on the intentional infliction of emotional distress claim in light of the fact that the events underpinning that claim

## 2. **Failure to State a Claim**

In order to prevail on a claim of intentional infliction of emotional distress, Plaintiff must show: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. See Hendrix v. Phillips, 428 S.E.2d 91, 92 (Ga. Ct. App. 1993). Whether Defendant's employees' actions rose to the requisite level of outrageousness is a question of law to be determined by the court. Yarbray v. S. Bell Tel. & Tel. Co., 409 S.E.2d 835, 838 (Ga. 1991). Among the factors to be considered are "the existence of a relationship in which one person has control over another; the actor's awareness of the victim's particular susceptibility; and the severity of the resultant harm." Trimble v. Circuit City Stores, Inc., 469 S.E.2d 776, 778 (Ga. Ct. App. 1996) (internal citations omitted). Georgia courts have found liability for intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Yarbrough v. SAS Sys., Inc., 419 S.E.2d 507, 509 (Ga. Ct. App.), cert. denied, No. S92C1151, 1992 Ga. LEXIS 674 (July 16, 1992). "The burden on a plaintiff asserting a claim for intentional infliction of emotional

---

appear to be the same as those underpinning Plaintiff's Title VII discriminatory termination claim, and in particular her contention that she was terminated because of her sex.

distress is heavy." <u>Durley v. APAC, Inc.</u>, 236 F.3d 651, 658 (11th Cir. 2000).

Although this is a close case, the undersigned finds that Plaintiff's complaint alleges conduct that would satisfy the "extreme and outrageous" element of her claim for intentional infliction of emotional distress, based on the following allegations: she was subjected to humiliating, derogatory and abusive language and behavior throughout her employment, in front of co-workers and customers, because of her sex; managers and co-workers interfered with her sales, and that interference potentially affected her compensation because she earned a commission on sales; a manager sought to make her cry and berated her until he was successful; a sales manager locked her in a car while male salespersons "stood around the car and laughed at her"; she was subjected to disparate discipline because of her sex; and she was ultimately terminated, and told by her manager, " 'I told you we were going to get rid of you and we have.' " (<u>See</u> Compl. ¶¶ 15, 17-26).

The undersigned finds the facts alleged in this case to be similar to those alleged in cases where Georgia courts have found actionable intentional infliction of emotional distress claims. In <u>Yarbray</u>, for example, the court allowed an intentional infliction of emotional distress claim to go forward where the plaintiff alleged that before she testified in an employment discrimination case, "the company [through its lawyer] threatened that she would lose her job if she

testified against the company," and that following her testimony, she was transferred to another division "where she was underused, undervalued, and abused by her supervisor." 409 S.E.2d at 836. The court explained:

> The fact that Southern Bell deliberately set out to retaliate against her, and to punish her for ignoring its lawyer's admonitions and testifying against the employer, which retaliation included subjecting her to abuse by her supervisor and causing her severe emotional pain, if proved, would meet the threshold which reasonable persons would consider outrageous and extreme conduct . . . .

Id. at 838; see also Trimble, 469 S.E.2d at 777-78 (finding that the plaintiff had stated a claim for intentional infliction of emotional distress based on allegations that the plaintiff's supervisor sexually harassed her by "unwanted touching, lewd comments and gestures, and other similar acts," hugging and rubbing against her, ridiculing her in front of other employees, and placing his hands down her skirt, and that after she complained of the harassment, the defendant continued the pattern of harassment by "deliberately altering and removing her sales figures upon which commissions were figured, requiring [her] to work extremely long hours with no days off, ordering her to lift television consoles in excess of 25 pounds, refusing to compensate her for overtime, and forcing her to perform price comparisons at competitors more often than other sales personnel, reducing her volume of commission sales"); cf. Witter v. Delta Airlines, Inc., 966 F. Supp. 1193, 1201 (N.D. Ga. 1997) (noting that Yarbray and other cases cited by the plaintiff were distinguishable because in those cases, "the plaintiffs suffered harassing

comments and abuse from superiors," but in <u>Witter</u>, the plaintiff did "not point the court to the type of direct abuse from superiors which was suffered by the plaintiffs in the above cases"), <u>aff'd</u>, 138 F.3d 1366 (11th Cir. 1998).

The undersigned acknowledges Defendant's argument that Plaintiff's complaint fails to allege facts showing that she experienced severe emotional distress, another element of her intentional infliction of emotional distress claim. (Doc. 4, Def. Br. at 13-14). In her complaint, Plaintiff describes Defendant's employees' abusive and humiliating statements and actions, alleges that a manager indicated he wanted to make her cry and then berated her until she did so, and alleges that she suffered severe emotional distress. While the question is a close one, the undersigned finds that Plaintiff has sufficiently alleged that she suffered severe emotional distress to withstand a motion to dismiss. If, in the course of discovery, Plaintiff does not produce evidence to support her allegation that she suffered severe emotional distress, Defendant will have an opportunity to seek dismissal of her intentional infliction of emotional distress claim on motion for summary judgment.

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's intentional infliction of emotional distress claim on the ground that it fails to state a claim be **DENIED without prejudice** to Defendant's right to move for summary judgment on that claim following discovery.

### III.  Summary

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's motion to dismiss [Doc. 4] be **GRANTED in part and DENIED in part**.  It is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Title VII sexual harassment claim (part of Second Claim for Relief) be **GRANTED** and that her sexual harassment claim be **DISMISSED**.  It is further **RECOMMENDED** that Plaintiff's 42 U.S.C. § 1981 sex discrimination claim (First Claim for Relief) be **DISMISSED**.  Finally, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's intentional infliction of emotional distress claim (Third Claim for Relief) be **DENIED without prejudice** to Defendant's right to move for summary judgment on that claim following discovery.  Defendant did not seek dismissal of Plaintiff's Title VII discriminatory termination claim (part of First Claim for Relief), and therefore, that claim also remains pending.

Defendant is **DIRECTED** to file an answer to Plaintiff's complaint **no later than fourteen (14) days** from the date of entry of the District Court's Order on Defendant's motion to dismiss.  The court will then enter a scheduling and discovery order.

**IT IS SO ORDERED, REPORTED AND RECOMMENDED**, this 15th day of June, 2012.

*Susan S. Cole*
SUSAN S. COLE
United States Magistrate Judge